Tom Beck on behalf of Mr. Sartori. I recognize from being a long-time member of the Civil Rights Bar that an appeal like this is rare. Seeking a reversal after a jury trial is not one of the most often publicized cases. I understand where we're coming from and I think the Court can appreciate that. But in my opinion, the Court in this case sabotaged a fair trial by letting into evidence things that clearly should never have been admitted that took the jury's attention completely away from the merits of the case. And I speak to the merits of the case as being completely captured on videotape. I don't know how a jury could have avoided that information except under the circumstances that this appeal presents. We did our best to correct it, mitigate what was going on in the trial, but it was a losing battle in light of the fact that Mr. Sartori was repeatedly defamed and disparaged in a way that the evidence code prohibits. Mr. Beck, pardon me for being an armchair quarterback, but why didn't you file a motion in limine or a Rule 104 motion with regard to the arrest and misdemeanor convictions and at least get a ruling on it prior to trial? All I can answer to that is mea culpa. It's so obvious that those kinds of things don't come in that I expected the defense to know and I expected the Court to be understanding of that as well. You don't make an in limine motion unless you have a unique set of circumstances. And that's what the in limines are for, but when you have the defense making an in limine using the identical law that I would have used in a motion of my own, they know what they can't do and I know what can't come in, so what's the point? So I objected. Well, sometimes you objected and sometimes you didn't. Would you agree with me that the kidnapping arrest was probably the most prejudicial from your client's point of view? Absolutely. And there was no contemporaneous objection? Well, I thought the objections that I had been making all along, I didn't want to draw fire from the Court. I mean, I said that stuff shouldn't come in and I had pointed out as a continuing objection. I felt that I made a sufficient record. You wouldn't have a problem if the trial court had sustained your continuing objection, but the trial court denied it. I don't think the trial court said anything at all. I'm remembering the record correctly. Oh, the fact that I made a continuing objection? Yes. All right. Well, I read the record a different way and my memory of it is different, but be that as it may, I tried to correct what I thought was extremely prejudicial. Let me turn to another point, and that has to do with a related matter, and that's the refusal of the Court to allow, shield the officers really, against evidence of a code of silence. I mean, we live in a world today where not everybody knows what a code of silence in law enforcement is, but those of us who practice in the area do, and jurors who are the ones who ought to know or be educated about what that is and how it plays out in a case like ours where there was ample, I mean abundant, evidence of how officers were not telling the truth about one another's behavior or their own, as demonstrated by the videotape, which spoke for itself, that the Court shielded these officers from that kind of evidence, and frankly, it's credibility evidence that in a case where credibility is pivotal, ought to have been allowed, and that denial was prejudicial. Can I ask you, what do you think the videotape shows that's so damning? Because I watched it, and I've heard you now say twice, and you said it in your brief. As a matter of fact, the preview you gave in your brief made me so anxious to see the video that I was sort of underwhelmed when I actually watched it. So what is it that's so egregious that occurred on the video in your view? Well, two things that are very important, and they relate to the malicious prosecution accusations. Officer Matusik and Officer Sergeant Matusik and Sergeant Jenum both maintain that Sartori spat in Matusik's face on that. It's there well inside what you see on the tape. The videotape absolutely refutes that. I disagree. There is definitely a very distinct place where it looks like he's sort of going like that right in their face. Now, you can't see any spit come out, I grant you that, but it's certainly consistent with the officer's version of events, isn't it? I don't see it that way. I've seen that thing 200 times, studied it, did my best to understand what was in it, and I felt secure in the fact that, at least as to that allegation, that we were able to prove it, and the criminal case verdict demonstrated it. Second is Vasquez's allegation, supported by the other deputy whose name doesn't come to mind, Rosales, that he, being escorted down the stairs, was turned around and spat up at Vasquez, which is the second allegation that we defended in the criminal case, which the trial judge took away from the jury and acquitted him on that. And then third was the allegation to force. Now, one of the things that's most profoundly evident on that is, yes, they threw him against the wall. They denied that they'd done it. He had the injuries to prove it. They threw him against the gate at the bottom. They had the blood and the physical evidence at the bottom to prove it. And in my view, the videotape refutes those allegations in their entirety. That was the civil side of our case, and the excessive force defense in the underlying criminal case. That's why I think the evidence in the videotape is so singularly probative of all of these matters. You and I can disagree on interpretation, but that doesn't really address what we're here about. I think that given the reasonable interpretations between yourself and myself, a jury should have been focusing on that instead of the character of the plaintiff. Yeah, I'll just put my cards on the table for you. I mean, I agree with you completely on the inadmissibility of a lot of the arrests and the convictions, the misdemeanor conviction. That absolutely should not have come in, and I was shocked to see that it did come in. So I understand what you're saying about I didn't file a motion to eliminate because it seemed that obvious. But the defendants nonetheless argued that any error in admitting that evidence was harmless, and that's why I say if the video maybe had been more compelling, perhaps you'd have a stronger argument. And then the other thing to marry with that is that your client did admit, I think on cross-examination, that he actually lied under oath during his deposition. I hope that you could address that, because obviously that might dwarf any harm to his credibility that the admission of this other evidence of prior arrest might have had. Well, I did speak about it in the briefs, and the point is that he made that statement, and that, you know, as a lawyer, you deal with it. And my effort to try to deal with it was thwarted by the trial court. As you may recall from the record, when I tried to question him about that testimony, the admission that he'd made a false statement in his deposition, that he actually remembered something that he said he didn't, I wanted to fix it. I wanted to cure it, and the judge wouldn't allow me to. I mean, that's where I was prejudiced. I could have mitigated that, but I was barred from doing it, and that hurt us, too. Lastly, I want to talk about the Rule 50A motion that had been denied, the Rule 50A and B, on the issue of the entrance into the propinquity or the curtilage of the house. That was undisputed evidence. Sergeant Matusek herself admitted she knew that she couldn't go into the curtilage of her house and excused it on the fact that this gate was allegedly unlocked. Nobody refuted any of that at the trial, and I think I deserve the Rule 50A motion on that claim. I think the law supports me. I don't know what else I can tell you about that. I'm going to reserve what I've got left on the clock. We'll hear from the defense. Good morning, Justices. Ricky Ivey on behalf of the respondents. The argument that the video establishes all that was necessary for the jury to find in the plaintiff's favor, I think, is nonsense. The video has to be narrated, and on that, that narration, of course, depends upon the witnesses and the witnesses' credibility, their perception, and other matters within the province of the jury. The jury looked at that video some 50 times. We all did. We looked at it in slow motion, real time, and the jury rejected the counsel's perception of the video. Can I ask you one question? You said the video needs to be narrated, and I guess as to the spitting, I suppose, because you can't actually see spit fly, but what other elements of the competing stories did the video need narration for the jury to understand? The spitting was one thing. The resistance that led to the altercation at the bottom of the stairs was another. Whether there was excessive force used by Deputy Ayoub when he was holding a pellet against the wall, as you said, using the wall more or less as a limiting agent, had to be narrated because the jury couldn't see that. The plaintiff, in the testimony, the pellet contended that he was being pressed against the wall, and Ayoub denied that. He said he was holding it there, and at the bottom of the stairs, the pellet contended that he was attacked by the officers. They say no, that what he did was try to break away, and what he did was spit on Vasquez, and that led to the altercation at the bottom of the stairs. Those things weren't evident from the video. They had to be narrated. This went to the excessive force claim. On his issue of the false arrest, again, that has to be narrated. The first thing he said to Deputy Matusak when she approached him on the stairway was that he was going to see about his mother who had been involved in the accident around the corner. That was a lie, and the deputies knew that he was lying, sort of reasonably suspected that he was lying because they had seen the mother. They had already interviewed some of the witnesses and knew it was a male that fit his description that was driving the vehicle. That was a violation of Vehicle Code Section 31, which is a criminal violation, and entitled and certainly established the basis of probable cause for the deputies to arrest him right then. That was the very first thing that he said. And so that part, of course, had to be narrated because you can't hear that. At that point, they had a right to detain him because he violated law in their presence. That was a misdemeanor violation committed in their presence. They had a right to arrest him at that point. So those are the aspects of the claim that are not established just by watching the video. So why, though, then, from that admission, it seems to me you'd have to agree that credibility was one of the central issues that the jury was called upon to resolve here. And I have to tell you, I don't see any basis on which the evidence of his arrest and I guess it was maybe a misdemeanor conviction, I don't see that as having been admissible here. You mean the disputed evidence that counsel is raising? Yes. And you argue that the error was harmless. But, boy, you know, some of the stuff was pretty damning. It's hard to, you know, you read that in the transcript. I don't know what the impact was in the courtroom, but I could see how a jury would be very prejudiced against him based on something about his girlfriend and this and that. So let's hear what you have to say in terms of why you think it was harmless for the jury to hear that. I'll tell you. I can talk about why I think it was harmless. Then I'll flip back and talk about it. Or you do it the other way. Okay. Because you think it was admissible because he raised the issue of emotional damage? That was the only reason. That's the only reason we went there. And the reason we went there is because it was so broad and continuing that, you know, he had this whole fear of the police and so forth. Wait a minute, Mr. Ivey. You could have done that by simply asking if he had been arrested on prior occasions, but you didn't stop there. You not only got into the nature of the arrest, like kidnapping, for example, then you got into the facts of some of the arrests. So what would be your possible good faith basis for going as far as you did, in my view, assassinating the character of Mr. Santori? What's your good faith basis for doing that? Well, the thing that I was trying to address, what I wanted to raise, was really the emotional content of the prior acts that he was involved in. He was saying he was having these type of emotional distresses as a result only of this incident. But he had a lot of incidences that were highly emotional, very charged. None of which would be admissible, though. That was what I was trying to raise and trying to use to rebut his claim that all of his emotional distresses arose just from this incident. So that's why you got into the kidnapping arrest? And then gratuitously added in front of the jury that he pushed his girlfriend out of the car? Those were the reasons why we raised that. I mean, they were very emotional, highly charged incidences in his life. And I think that that type of emotional stresses that he'd been involved in paled in comparison to this one incident where he was arrested because he had done something admittedly illegal. I mean, so that was my thought. Well, let me answer this. In the reply brief, the plaintiff raised two circuit cases, the Nelson case from the Seventh Circuit and the Smith v. City of Baltimore case from the Fourth Circuit. He hadn't had a chance to respond to those. Those cases, as I read them, likely would hold that it's not admissible, that none of what you did was admissible for your justification of showing his emotional distress. So respond to those two cases. Well, in Nelson and in Smith, the Nelson, they said that, the court said that, look, when the claim is narrowed, in this case it was only 30 minutes of emotional distress that the appellate in that case was complaining of, then you wouldn't have a basis to admit the prior arrest or subsequent arrest in context with law enforcement. But when it's broad and continuing, as his claim was, his claim was exactly the type of claim where Nelson said evidence of prior arrest and subsequent arrest and convictions could be admitted, because he's painting this broad brush and all of his emotional trauma, his problems with law enforcement, all stem from this one incident. And that just wasn't the case. But that's what the two plaintiffs claimed in those two court of appeals decisions. No, no, no, no. In Nelson, the Nelson specifically, it was only for half an hour. And he said he was very distressed. Again, and in Smith, it was a very limited claim for the period of time that the appellate claimed emotional distress arising from that incident, not the broad brush that was painted in this case. And in that instance, Nelson says, yes, you know, that is appropriate to introduce evidence of prior contact. I'm still waiting for you to answer Judge Wadsworth's question about prejudice. Okay, now the prejudice, I'd like to get to that. In this case, the plaintiff admitted that he committed the violation. He admitted that he lied to the police when they first talked to him about it, admitted that he conspired with his mother to cover it up, admitted that he lied in the deposition in the instant case under oath, admitted that he lied to the police officer who, after he was arrested, admitted that he continued to lie and continued to try to convince the police officer that he was not the party involved in the collision. And in the face of all of these admissions of lying, of lying, even if that evidence had not been introduced, the evidence, the record was ample with justification for the jury's verdict. I don't believe, they weren't going to believe a thing this man said, regardless, because he's admitted to lying numerous times. And as you said, this case was based on credibility at the outset. So if this evidence had not been admitted, if disputed evidence had not been admitted, it's not likely that the jury would have reached any different decision. Well, if that's so true, why just spend so much effort assassinating his character with inadmissible evidence? You can't have it both ways, can you? Well, I agree with that. But, Your Honor, the issue came up at that moment in trial. These are dynamic moments. And so you're responding to what you're hearing. The impression that he tried to give the jury in this testimony was that he had never really had any issues before. And this was the main issue in his life that resulted in him having these emotional distresses. And that just wasn't true. And that wasn't true. And so for that reason, we raised those issues. But we, you know, the trial was for four and a half days. We raised all these other issues, too, and established all of these issues about Mr. Satori's conduct and the fact that he was a liar. And he could not be believed. And that's what the jury relied upon. Now, I know because I've had the advantage of talking to the jurors and, you know, and understanding what their thought was. And, you know, you're taught to do that when you're analyzing and looking at the case in hindsight. And I understand that. But I know what they were thinking. But the record is clear about that. And it's rare that you can take any case and have anybody get on the stand and lie repeatedly and admit they're lying. And, in fact, cross-examine them and they admit that the testimony that they just gave to the jury was a lie. So I submit to you that in the face of all that, and that's all of that testimony, this really didn't make any difference. This disputed evidence really didn't make any difference. And that's what Judge Otero talked about after the trial. And I rarely hear that kind of pronouncement that the court made. But his own impression was that this witness had just lied so aggressively and repeatedly that he was appalled that the case was brought. That's not going to change. So that, to me, was the basis of the verdict. Thank you. Thank you. Let me make two important points. Number one, it is undisputed at the outset of the case that Mr. Sartori, if he committed any offense at all, was leaving the scene of an accident. He was never arrested for that, booked for that, or charged for that, surprisingly. For that reason, there's never been ---- He did a little more than that. I mean, he got his mother to lie to the police. Well, actually, I don't know if he got his mother to lie. She just ---- she initially represented him to Tusik that she was the driver trying to shield him, but I don't think there's ---- He just came up with that on her own? I want to say that that's what the record ---- How does she know to say that? I mean, you know, there's certainly evidence that he did a little more than just run away. Well, having handled the mother's case, I was the attorney on that one, too. And the record in ours, there was no evidence that he put her up to that. I think she volunteered as a mom and then retracted it when she met the officers at the traffic accident site. But then when he's asked by the police, he sort of backs up the story by saying, no, it wasn't me. You could infer that. When I read it, it looked to me like they ---- but, you know, who knows? Certainly there would have been enough to charge him with lying to the police. Agreed. Because he himself lied. So it's not just running away from the accident. It's lying to the police. And possibly he could have been charged with conspiring with his mother to lie or inducing her to lie. Now, whether he would have been found guilty or not, certainly ---- Well, let me ---- Allow me to reach my point. Easy. Well, I have a theory about why they never charged him with what they could have charged him with, because this assault on him was what they were trying to deal with and everything else didn't matter. But to my point, there was no claim for false arrest. As we all know, there's probable cause for an arrest for any crime under the Devonpleck rule. We couldn't possibly prevail on a claim for false arrest. If the rule is different on a malprause claim, probable cause for each count has to stand up. And that's why we pled malicious prosecution, because by that time, you know, the probable cause that got him seized in the first place is uncontroverted. Second, to the issue of prejudice, if the evidence had only been what Mr. Ivey has now told you, without the introduction of the scurrilous evidence that also got in, I'd have no argument. Let the jury decide if Mr. Sartori is not to be credible in light of everything else in the case, in the absence of this extremely damaging and scurrilous information that, in my view, so powerful, kept the jury away from everything. He was an unworthy person. They were not going to treat him fairly. They certainly were going to not be objective in the determination of his claims. And the admission of the things that should never have gotten in, notwithstanding everything else that was properly in, turned that jury against him, and that denied him the fair trial that he was entitled to. Thank you. Okay, thank you. Case is highly sensitive.
judges: Kozinski, Watford, Bennett